Good morning, Your Honor. May it please the Court, Michael Tanaka appearing on behalf of Mr. Benamor. I'm going to address the confrontation issue first, and time permitting, I'll address the knowledge requirement with respect to the age of the shotgun. There was a clear confrontation violation here. The district court had ruled specifically that to admit the statement of Suzanne Ewan, the landlady, would be a violation of Crawford. Shortly after that, the agent testified that after talking to Ewan, he was able to confirm his belief that Mr. Benamor was the person who had committed this crime. The clear inference from that statement is that after talking to Ewan, Ewan said something, presumably that was Mr. Benamor's gun. That confirmed the agent's knowledge that Mr. Benamor was indeed guilty. The government got exactly what it wanted from this statement without having missed Ewan testify. The district court agrees with you, counsel, on all of that. The district court finds that there is a confrontation clause violation. The district court. The question is whether there was prejudice. So what's the prejudice here? The prejudice is, one — I mean, it would take a little bit of discernment on the part of the jury to figure out precisely what all of this meant. And there was more direct evidence that your client owned the gun in the form of asking the officer, I was just going to sell it. What am I likely to get here? What am I likely looking at? That's correct. There was that evidence. But the issue on a confrontation violation is, did the evidence contribute to the verdict? And while I don't — Well, we look at whether the evidence was — whether the introduction of it improperly was harmless error, right? I'm sorry, Your Honor. We are examining for harmless error. Harmless error, but in the context of a constitutional violation, the issue becomes whether the government has proved behind a reasonable doubt that the error didn't contribute to the verdict. Well, that's — regardless of how we phrase it, in addition to the fact that your client told Chavez that, well, I didn't really mean to use the shotgun. I was just going to maybe sell it, maybe give it away, sort of, you know, acknowledging that it was his. And it was found in his locked minivan, and he was seen, you know, using that minivan himself. So I have a hard time seeing how this indirect statement affected the verdict. Well, with respect to the statement to Chavez, there was reason to doubt that. The major reason was that — Reason to doubt that he said it? Yes. The main reason was that this dynamite evidence of guilt wasn't memorialized in report until a week later. That is suspect, to say the least. With respect to the locked minivan — On that question, let me just make sure I understand. I know that the officer didn't file a report until a week later. Did he not write it until a week later? That's my understanding. Did he write the report and then amend it later? My understanding is that he didn't write it until a week later. It's not crystal clear from the record. Why is that suspect, that he didn't write it contemporaneously? If he had written a report and then amended it later, that might be a lot more suspect. But the fact that he wrote it a week later, this isn't the kind of thing that you're likely to forget.  Well, the timing is, as he writes it the same day, on the same time it gets referred to the federal government for prosecution. But I don't know, Your Honor. It seems to me that if you have some evidence, you write the report immediately. That's the practice. Not a week later, not a month later. Certainly, the longer you get, the more suspect it becomes. But a week, I submit, is plenty of time to cast doubt on it. But that's just one point. And the other point is, though, that with respect to the locked car, and it was his van. There's no disputing that. But the keys were separate. He obviously had another vehicle. This was a common, a number of people lived there. Well, but when you look at how different the evidence was with respect to the ammunition of which he was acquitted, it's just dramatic. When he was found in a common area, he didn't confess to holding it. It didn't even match the firearm. But here it seems, I just can't imagine a jury coming to a different conclusion even without the landlady's statement. I just have a hard time doing that. Help me out. We have an honest difference there, I guess, and you're the court. But it's the whole context of the trial. This went straight to the heart of defense, which was to poke holes in the government's case. And that hole became much less reasonable if the officer is saying, you know, I talked to this neutral witness, and she, in effect, told me that I had the right person. So that corroborates all this other evidence, and it obviates any doubt the jury might have otherwise had about it. There was an absence of evidence of anyone that ever saw Mr. Bennemore with a gun, so it's all circumstantial. Well, if you consider an admission circumstantial, I understand that you say you think it may not have been an accurate rendition of what he said, but why would that be circumstantial if I said, Well, I'm not going to keep this book that I have. I'm going to give it away or sell it. Yeah, accrediting that, obviously, that would be the end. But as I said, there were reasons to doubt it. Moving very quickly to the issue about knowledge with respect to the age of the firearm, that's relatively clear-cut. The straight-line logic is that Staples held that in an analogous statute that implied a knowledge requirement. Here, there's a knowledge requirement written into the statute that the person who possessed it must know the characteristics that make it a statutory, bring it within the statutory definition of a firearm. Here, right in the defining section, it says that guns manufactured before 1898 are not firearms. And there is no circuit that agrees with you yet. Am I right about that? Everybody seems to have held that it's an affirmative defense and it's subjective in nature. It's maybe, whether it's an affirmative defense or not, I submit it's not dispositive. It certainly was put in issue. Once it's put in issue, it doesn't matter who's- Right. It makes a great deal of difference whether it's an affirmative defense or whether, because that shifts the burden. That depends on whether it's your burden or whether it's the government's burden. The burden of production, that burden was met, one, by the government's evidence of the gun itself, which was obviously very old. I thought in your briefing you agreed that it was an affirmative defense and then had arguments anyway as to why you should win. But now I'm a little puzzled by what position you're actually taking. It's really not material whether you call it an affirmative defense or not in this context, Your Honor. I mean, that's the same as in the immigration case where they found that whether it was an affirmative defense didn't matter for that context. Aguilar-Rios was that case. What matters is whether that element was at issue in this case, and it was. Once it's at issue, then the question is what level of knowledge must one have? And then we turn to Staples, and it says the knowledge the person has to have is knowledge that brings it within the definition of a firearm, and in this case, manufacture after 1898. But if it's an affirmative defense, then you've got to come forward with some evidence that your client believed that it was manufactured before 1898. It would be a perfect defense if it was actually manufactured before 1898. I assume that you're conceding that it was not manufactured, or at least you don't have any proof that it was manufactured before 1898. It looks like 1920s. That's correct. But if your client believed that, you might have a case. We had a bill of sale from a prior owner showing the provenance of the gun, or something from, you know, an advertisement from a reputable store that said, you know, buy, own an antique, own a part of the West. You know, this is an 1875 Winchester. I submit, Your Honor, that just looking at the gun itself leads to a reasonable inference that Mr. Benamor believed it was an antique gun, which the burden of production is very slight, and that was sufficient in connection with the request for the instruction. Thank you. You have exceeded your time, but we'll give you a minute for rebuttal when the time comes. Thank you. May it please the Court, Matthew O'Brien on behalf of the United States. Your Honors, I would point the Court to the District Court's credibility findings. The defense raised the exact same arguments about the police report and other issues to try to attack the credibility of Detectives Concanon and Chavez at trial, and before that, at a suppression hearing. It didn't work. The jury found the detectives credible, and most importantly, the District Court made extensive findings at ER 26 through 29. I want to ask you about the harmless error point or whatever the standard of review is. I don't want to get into the arguments between you about the standard of review. I want to focus on the evidence and the trial. It seems to me that the prosecutor emphasized the landlady's confirmation that this was the defendant's firearm and relied on it in closing, and so why isn't it hard to say beyond a reasonable doubt that that testimony did not have an effect on the verdict? For two reasons, Your Honor. First, I would dispute that the government argued that Ms. Ewan had told the agent that she had seen the defendant with the gun. That wasn't Agent Thompson's testimony, and it wasn't what the government argued in its rebuttal. No, but you referred to her testimony. Yes, as having a limited effect on Agent Thompson's investigation. And the District Court believed you violated his instructions. He did, although the District Court equivocated a bit and said any confrontation clause there, if any, and so the ruling wasn't, you know, Well, here, you heard that Special Agent Thompson went and interviewed the landlady in July. This is the argument, Special Agent Thompson testified that that interview with the landlady confirmed his suspicions, his knowledge that it was the defendant's gun and the defendant's ammunition. So, I mean, that seems like you, you know, went out of your way to rely on the landlady. Now, I mean, it seems to me that one answer is, well, the argument covered both the weapon and the ammunition, and they acquitted on the ammunition, so it must not have been, you know, that overwhelming a piece of argument. But it still concerns me. Well, Your Honor, in terms of harmlessness, again, at the time of the Ewan interview, the defendant had already been arrested twice and indicted for possession of the gun. So unlike in the Ocampo case, this wasn't, the out-of-court statement didn't contribute to the government and law enforcement solving the crime. No, the question is whether it affected the verdict, the admission of her statement or information to the agent. I don't think it did, Your Honor, nor did the district court. Again, he made fun of it. Well, why not? I'm asking you, I know what the district court did. Why wouldn't it have affected the verdict? Because under the, defendant confessed to the shotgun. He did not confess to the ammunition. The two key witnesses in the case, Detectives Kincannon and Chavez, were found to be highly credible. The district court found overwhelming evidence to support the guilty verdict on count one, putting aside the issue of Special Agent Thompson's testimony about the Ewan interview. So there was overwhelming evidence of defendant's guilt on count one, and that's why the snippet of the rebuttal regarding the Ewan testimony was harmless beyond a reasonable doubt. In the face of a, I thought, a fairly clear district court ruling that that evidence should not have been presented, but a decision by the U.S. attorney to not only present the evidence but to repeat it in closing argument, why should we believe now that it had no impact on the, obviously the U.S. attorney thought it was going to have an impact or he wouldn't have argued it and he wouldn't have gone all the way out to violate a district court order to put it into evidence. And now you're telling us that it didn't matter? Essentially, I am, Your Honor. It was, again, it wasn't brought up in the main closing. It was brought up in the rebuttal portion of the closing to respond to the defense argument about why didn't the government go and investigate other third parties. That was the context in which it was raised during the rebuttal argument. Again, to no objection, and although the district court did find that its prior ruling had been violated, it found that several months later. The defense is put in a little bit of a compromising position because if they object to it, they may call that jury's attention to it. They've previously alerted to the district court to the problem here, so I think it's probably preserved. I understand they didn't jump up at the time and say, hey, I think that violates the problem, but I think they're in a little bit of a precarious position there because all they're going to do is just call the jury's attention to this. Respectfully, Your Honor, I disagree. The district court's ruling the morning before the testimony at issue was that the agent could not testify that Ms. Ewan had told him that she had seen the defendant with a very old gun. That's not what Special Agent Thompson testified to. The second part of the ruling was not clear nor definitive. The district court ruled that when the government asked, well, can we get some guidance on the contours of the court's ruling, the district court ruled that depending on what the agent testified to as to the substance of the interview, then it would probably be prohibited. Again, that's neither a clear nor a definitive ruling, and that's what made it incumbent upon the defense to raise a contemporaneous objection so that if the court found there was some impropriety, limited instruction could be given or some other remedy. Instead, there was no contemporaneous objection, and the defense raises the point on appeal that they didn't want to draw attention to it, but there's nothing in the actual trial record or the arguments below in terms of the motion for a new trial that supports that argument. They didn't bring that up in the district court. Well, but how can they bring it up in the district court? They could have just said, Your Honor, objection, but we have a sidebar. That's what happens commonly. The issue had been teed up, and the prosecutor even asked in the snippet of testimony about the Ewan interview, told the special agent, without getting into the specifics of what Ms. Ewan told you, did it have any effect on your investigation? So the issue was teed up, and the defense, it was incumbent upon them to raise a contemporaneous objection. They did not. Why would it be important if it had an impact on his investigation? How would that move the inquiry further for the jury, unless it was to demonstrate that that witness had seen him in possession of the gun? What other purpose would it be offered for? It was offered to respond. Again, this is on redirect, not in the agent's direct testimony, to respond to the questions on his cross about why he didn't investigate this third party, Mr. Vasquez. Again, he interviewed Ms. Ewan six weeks after the arrest and about five weeks after a defendant's confession. So the point was that the Ewan interview did not change the course of the investigation. It had a very limiting impact. Now, I would agree that his testimony about the Ewan interview did tend to be incriminating, but he did not testify that Ms. Ewan had seen the defendant with the gun, and there are multiple other inferences that jurors could have drawn from this snippet of testimony, most notably, as we raised in our brief and below, that Ms. Ewan told him something about that Mr. Vasquez had nothing to do with either the garage or the minivan. It could have been something exculpatory as to Mr. Vasquez, but there's no evidence in the testimony or anywhere in the record to show that jurors must have concluded, from this snippet of testimony, that Ms. Ewan had seen Mr. Benamor with the gun,  The parties knew that and the judge knew that, but the jury didn't, and so I'd urge the court not to conflate what's in the record about what Ms. Ewan actually told the special agent versus what the jury knew, which is very little. You've got just a few seconds. Would you turn to the question of the affirmative defense? What does a defendant have to do in order to prove an affirmative defense? Does he have to actually prove that the gun was manufactured before 1898, or can he prove that there was a bill of sale that said, I'm selling you an 1875 Winchester, and that he reasonably thought it was an ancient gun, even if it turned out to be a modern reproduction? Your Honor, as to the first part of your question, yes. The defense has to bring forward some evidence to support it. I understand. I'm not talking about burden of production. I'm asking whether even if the gun is not manufactured before 1898, if it is a successful affirmative defense, if he comes forward with proof that he reasonably believed it was a gun that was manufactured before 1898. No, Your Honor, it's not a successful defense, and I would point the court to the Fourth Circuit's decision in Royal in 2013, which the issue was the age of the ammunition versus the gun, but there the defendant raised almost the exact same argument. And most importantly, Your Honor, the court doesn't need to reach this issue because there was no evidence whatsoever to support the argument that defendants subjectively believed that the gun was an antique. When he confessed, he didn't say, oh, boy, I thought this was an antique. There's nothing in the record to support that defense. And obviously the gun itself said that it had a patent pending as of June 15, 1915, as the government's expert testified. That was all in the record before the jury. And there's abundant evidence outside of what the jury knew, but also in the record that would undermine defendant's belief. But they didn't raise it. They didn't ask for a good faith instruction. Defendant didn't seek to take the stand. There's just nothing in the record to support the defendant's request to offer this theory of the defense instruction. And so I submit that there's no legal support for it. But even if the court has some doubts on that issue, there was nothing in the record to justify the district court offering this instruction to the jury. Thank you, counsel. Mr. Tanaka, you have some time if you'd like it. Just a couple of quick points. One, with respect to what the jury must have inferred from the statement, I submit that government counsel's argument shows that they did not use it to say, oh, Vasquez had nothing to do with it. Vasquez had nothing to do with it because it was Ben Amor's gun. As I said, it was offered to explain why they didn't investigate Vasquez, but I believe counsel also said that Vasquez was never a suspect and it didn't affect the investigation because the interview didn't take place until six weeks after the arrest, at which point the investigation was virtually finished and nothing to do with Vasquez and everything to do with Ben Amor. The second point is, yes, there are two aspects to the harmless question. One is the quantum of evidence pointing to guilt, but then the other part is the weight of the inadmissible evidence. And here, as at least suggested by the court's questioning, part of the reason it was harmful was because the government relied on it and highlighted it. They relied on it to get it in in the first place because there was no legitimate admissible purpose. They relied on it again during closing argument when they highlighted that Agent Thompson confirmed, after he talked to Ms. Hewan about his knowledge, that Ben Amor was guilty. It's as much as saying that the police know you should trust them. They have information that you don't have. One of it was this interview, and he's guilty. And then the second part, again, there was more evidence on the gun than ammunition, but that doesn't mean that the statement didn't affect the guilty finding on the gun. Thank you, counsel. The case just argued is submitted for decision, and we appreciate helpful arguments from both of you.
judges: Graber, Bybee, Harpool